948 So.2d 1128 (2006)
STATE of Louisiana
v.
Anthony DARENSBOURG.
No. 06-KA-572.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2006.
*1131 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Andrea F. Long, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Gwendolyn K. Brown, Attorney at Law, Louisiana Appellate Project, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
This is defendant's second appeal. In his first appeal, defendant's conviction for distribution of cocaine was affirmed. His 20-year sentence was vacated and the matter was remanded for resentencing after this Court noted an error patent; specifically, that defendant's entire sentence was imposed without the benefit of parole, probation, or suspension of sentence in violation of the statute, LSA-R.S. 40:967(B)(4)(b), which requires only the first two years of the sentence be without benefits. State v. Darensbourg, 03-1468 (La.App. 5 Cir. 3/30/04), 871 So.2d 533, 536. On remand, the trial court resentenced defendant to 20 years with the first two years being without the benefit of parole, probation, or suspension of sentence.
At the time of his first appeal, a multiple bill of information alleging defendant to be a fourth felony offender was pending. A multiple bill hearing was subsequently held on May 27, 2004, approximately two weeks after defendant was resentenced on remand. At the conclusion of the hearing, the trial court found defendant to be a third felony offender and imposed an enhanced sentence of 24 years at hard labor without the benefit of probation or suspension of sentence. Defendant was granted an out-of-time appeal and, in his second appeal, he challenges his adjudication as a third felony offender.
The facts of the underlying conviction are not relevant to this second appeal pertaining to defendant's adjudication as a multiple offender and are set forth in State v. Darensbourg, 03-1468 (La.App. 5 Cir. 3/30/04), 871 So.2d 533, 535.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues the State's pursuit of the multiple bill, alleging him to be a fourth felony offender, was vindictive prosecution resulting from his successful appeal on the underlying conviction wherein his sentence was vacated. He points out that the multiple bill hearing was not heard until nineteen months after he was sentenced on the underlying charge and after months of inactivity. Defendant asserts the State's actions create a presumption of vindictiveness and contends the matter must be remanded for the State to prove, by a preponderance of the evidence, that its actions were not retaliatory for his first appeal. The State responds that defendant is precluded from raising this issue on appeal because it is being raised for the first time on appeal.
Generally, a new issue, that has not been submitted to the trial court for a decision, cannot be raised for the first time on appeal. State v. Shank, 05-421 (La. App. 5 Cir. 2/14/06), 924 So.2d 316, 326. Defendant never raised the issue of prosecutorial vindictiveness at the trial court *1132 level. Although he filed a motion to quash the multiple bill, his objection was based on the validity of the predicate offenses and not prosecutorial vindictiveness. Thus, this issue is technically not properly before this Court. However, in State v. Aleman, 01-743 (La.App. 5 Cir. 1/15/02), 809 So.2d 1056, 1066, writ denied, 02-0481 (La.3/14/03), 839 So.2d 26, this Court addressed the merits of a claim of prosecutorial vindictiveness despite the defendant's failure to raise the issue at the trial court level. Thus, we will address the merits of this claim on appeal.
The defendant bears the burden of proving prosecutorial vindictiveness. In determining whether there has been prosecutorial vindictiveness, the court examines the State's actions in the context of the entire proceeding. If, to a reasonable mind, the filing of the habitual offender bill can only be explained by a desire to deter or punish the defendant's exercise of legal rights, the events in the case will create a presumption of vindictiveness. State v. Heard, 36,191 (La.App. 2 Cir. 7/17/02), 823 So.2d 454, 457.
Defendant claims prosecutorial vindictiveness based on the State's prosecution of him as a multiple offender after his appeal on the underlying conviction. Defendant maintains the State pursued the multiple bill to punish him after exercising his right to appeal.
Defendant filed his motion for appeal on August 27, 2003, which was after his conviction but before sentencing. He was subsequently sentenced on the underlying conviction on October 8, 2003. On the same day, the State filed a multiple bill of information alleging defendant to be a fourth felony offender. Defendant denied the allegations and the matter was set for hearing. The record shows the multiple bill hearing was set and continued, for various reasons including the trial judge's two family emergencies, on five separate dates before being heard on May 27, 2004. In the interim, defendant's appeal from the underlying conviction was lodged and the opinion was rendered. Thus, at the time of his first appeal, defendant had been charged as a multiple offender, but the multiple offender hearing was still pending.
The district attorney has the discretionary power to charge a defendant under the habitual offender law just as he has the initial unlimited power to prosecute "whom, when, and how" he chooses. State v. Dorthey, 623 So.2d 1276, 1279 (La.1993); LSA.-C.Cr.P. art. 61. The district attorney's use of the habitual offender laws "provides an ancillary sentencing factor designed to serve important and legitimate societal purposes." State v. Orange, 02-711 (La.App. 1 Cir. 4/11/03), 845 So.2d 570, 578, writs denied, 03-1352 (La.5/21/04), 874 So.2d 161, and 03-2195 (La.7/2/04), 877 So.2d 137. The use of the habitual offender law alone does not create a presumption of prosecutorial vindictiveness. Id.
There is no evidence the State's pursuit of the multiple bill against defendant was vindictive. The record shows the State timely filed the multiple bill immediately upon sentencing on the underlying conviction. The multiple bill was set for hearing several times while the appeal from the underlying conviction was pending. Nothing in the record suggests the prosecution of the multiple bill was intended to punish defendant for what defendant characterizes as his "successful" appeal. The mere fact the multiple bill hearing was not held until after the ruling on defendant's original appeal appears merely coincidental. Based on the circumstances, the delay in prosecution was not unreasonable and does not indicate prosecutorial vindictiveness.

*1133 ASSIGNMENT OF ERROR NUMBER TWO

Defendant next argues the trial court erred by adjudicating him an habitual offender because the record is not clear regarding which charges the State pursued, and those which the trial court found, to support the third felony habitual offender adjudication. Defendant argues the trial court erred because he was unaware on which predicate offenses the State proceeded. He asserts the State pursued him as a third felony offender despite the allegations in the multiple bill that he was a fourth felony offender. He claims the State nonetheless presented evidence of all three predicate offenses as alleged in the multiple bill. Defendant claims that while the trial court adjudicated him a third felony offender, it failed to articulate which of the predicate offenses supported its adjudication.
At the beginning of the multiple bill hearing, the State advised it filed a multiple bill alleging defendant to be a fourth felony offender but that it was "going forward with this as a triple bill." The State advised defense counsel that the fingerprints on one arrest card did not match up with one of the listed offenses and, thus, it was now alleging defendant had two prior felony convictions. Defense counsel advised the trial court that it was just learning of the change and asked that the State inform him which predicate offense had been dropped. Thereafter, an off record bench conference was held. When the parties returned from the off record bench conference, the State immediately called its first witness and presented its case without any objection.
Again, defendant is attempting to raise an issue that was not raised at the trial court. A new issue that has not been submitted to the trial court for a decision cannot be raised for the first time on appeal. State v. Shank, 05-421 (La.App. 5 Cir. 2/14/06), 924 So.2d 316, 326. Defendant proceeded with the multiple bill hearing without any objection to the State's declared intent to prosecute him as a third felony offender as opposed to a fourth felony offender. An off record bench conference was held immediately after the State's declared intent and the hearing proceeded with no objection. Therefore, we find this matter is not properly before this Court and we will not address the merits of this assignment of error.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant argues the trial court erred by adjudicating him an habitual offender because the State's proof is insufficient to support the charge that he is a third felony offender. He contends his predicate convictions were based on invalid guilty pleas and maintains the State failed to prove the constitutionality of his predicate pleas. He asserts the State failed to submit transcripts of the predicate plea colloquies and argues the minute entries and plea forms from his predicate pleas were inadequate to show he knowingly and intelligently waived his rights when entering the guilty pleas. He also alleges the State failed to prove his identity in the predicate offenses.
To prove defendant is a habitual offender, the State must initially prove the prior felony convictions and that defendant is the same person who was convicted of the prior felonies. State v. Fleming, 04-1218 (La.App. 5 Cir. 4/26/05), 902 So.2d 451, 455, writ denied, 05-1715 (La.2/10/06), 924 So.2d 161. The latter can be established by expert testimony matching the accused's fingerprints with those in the record from the prior proceedings. Id. When the State relies on a prior conviction that is based on a guilty plea and defendant denies the allegations in the multiple *1134 bill of information, the State bears the burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel (or constitutionally waived counsel) at the time he entered his plea. State v. Zachary, 01-3191 (La.10/25/02), 829 So.2d 405, 407, and State v. Shelton, 621 So.2d 769, 779-780 (La.1993).
After the State meets this burden, the defendant must produce affirmative evidence indicating an infringement of his rights or a procedural irregularity in the taking of the plea. State v. Shelton, supra at 779. If the defendant is able to meet his burden, the burden shifts back to the State to prove the constitutionality of the plea, or that the plea was knowing and voluntary. Id. The State will meet its burden by producing a "perfect" transcript, which contains a colloquy of the guilty plea wherein the defendant was informed of and waived his Boykin rights.[1] If the State produces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge must then weigh the evidence to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. State v. Shelton, supra at 780.
Defendant first argues the State failed to prove his identity with respect to two of the predicate pleas: the 1996 distribution of cocaine conviction, and the 2000 theft conviction. At the multiple bill hearing, the State offered certified court documents pertaining to the 1996 conviction, and the 2000 conviction. Exhibit S-4 contained a bill of information with fingerprints, a waiver of constitutional rights plea of guilty form executed by defendant, his attorney, and the trial judge, a minute entry showing defendant pled guilty, and an arrest card containing fingerprints. Exhibit S-3 contained a bill of information without fingerprints, a waiver of rights form executed by defendant, his attorney, and the trial judge, a minute entry showing defendant pled guilty after being advised of his rights, and an arrest card containing fingerprints. To prove identity, the State offered the testimony of Lieutenant Patricia Adams, a fingerprint expert, who linked the fingerprints contained in Exhibits S-3 and S-4 to defendant.
Defendant challenges his identity in both the 1996 and 2000 convictions because the State used fingerprints from an arrest card as opposed to fingerprints on the bill of information. This Court has held that testimony comparing a defendant's current fingerprints with those found on prior arrest records is sufficient to prove that the defendant was the person convicted of a prior felony. State v. Baker, 00-1050 (La. App. 5 Cir 11/15/00), 776 So.2d 1212, 1217, writ denied, 01-0044 (La.11/16/01), 802 So.2d 621. In State v. Guillard, 04-899 (La.App. 5 Cir. 4/26/05), 902 So.2d 1061, 1074, writ denied, 05-1381 (La.1/13/06), 920 So.2d 233, defendant argued the State failed to prove his identity in predicate conviction because there were no fingerprints on the bill of information. This Court upheld defendant's adjudication as a multiple offender finding that the arrest register, containing fingerprints matched to the defendant by expert testimony, was connected to the bill of information by the charged offense, the name of the defendant, his date of birth, and Social Security number.
Like Guillard, the bill of information from the 2000 conviction did not contain *1135 fingerprints. However, an arrest card with fingerprints was included in Exhibit S-3. The arrest card was clearly connected to the bill of information. Both the arrest card and bill of information had the same date, the same charged offense, the name of the defendant, and his date of birth. Thus, the State adequately proved defendant's identity in the 2000 conviction through use of a fingerprint expert linking the fingerprints on the arrest card in Exhibit S-3 to defendant.
The identity of defendant in the 1996 conviction is questionable. Although Lieutenant Adams linked defendant to the fingerprints on the arrest card in Exhibit S-4, the arrest card and the bill of information do not match exactly. The bill of information in the 1996 conviction charges defendant with distribution of cocaine in violation of LSA-R.S. 40:967(A). The arrest register lists the charge against defendant as possession of cocaine, a violation of LSA-R.S. 40:976(C). Also, the bill of information is dated April 16, 1996 with the offense allegedly occurring April 19, 1996, of which one date is clearly a clerical error. However, the arrest register is dated an entirely different date of April 27, 1995. Defendant's date of birth matches on both the bill of information and the arrest register. Of note, although the bill of information in Exhibit S-4 contains fingerprints, Lieutenant Adams did not rely on those fingerprints to link defendant to the conviction but rather relied on the fingerprints in the attached arrest register.
Whether the State proved defendant's identity in the 1996 conviction has no effect on defendant's adjudication as a third felony offender because the State presented evidence of three predicate offenses during the hearing. Thus, even if the 1996 conviction was not properly linked to defendant, the remaining evidence, namely the 1994 and 2000 convictions, supports defendant's adjudication as a third felony offender.
Defendant also challenges the 1994 conviction, but bases his challenge on the validity of the predicate guilty plea and not identity. Defendant denied the allegations of the multiple offender bill of information and objected, in writing, to the validity of the predicate guilty pleas. Thus, under Shelton, the State was required to prove the existence of a counseled guilty plea.
At the multiple bill hearing, the State introduced a certified copy of court records for a 1994 possession of cocaine conviction, in addition to the above-mentioned records for the 1996 and 2000 convictions. Exhibit S-2 contained the bill of information with fingerprints, a waiver of constitutional rights plea of guilty form executed by defendant, his attorney, and the trial judge, and a minute entry showing defendant pled guilty after being advised of his rights. The records in all three convictions show defendant was represented by counsel at the time he entered his guilty pleas. The State proved the identity of defendant in the predicate pleas, through the testimony of Patricia Adams, a fingerprint expert, who linked the fingerprints contained in Exhibit S-2, S-3, and S-4 to defendant.
Once the State proved the existence of the prior counseled guilty pleas, the burden shifted to defendant to prove an infringement on his rights or an irregularity in the taking of the pleas in the predicate convictions. At the multiple bill hearing, defendant challenged the 1994 possession of cocaine conviction by arguing the waiver of rights form was insufficient to show a valid waiver of rights because the rights were merely checked off as opposed to being signed or initialed by defendant. There has never been a requirement that *1136 defendant initial each line on which his rights are set forth in a plea form. See, State v. Robair, 622 So.2d 829, 831 (La. App. 4 Cir.1993).
In State v. Fleming, 04-1218 (La.App. 5 Cir. 4/26/05), 902 So.2d 451, 457, writ denied, 05-1715 (La.2/10/06), 924 So.2d 161, the defendant made a similar argument in challenging the validity of a predicate plea. The defendant complained there were no initials next to the rights being waived. This Court found that even though the defendant did not initial each right he was waiving, he signed the form acknowledging he was waiving the rights. This Court determined the defendant failed to meet his burden to present affirmative evidence of an infringement on his rights or of a procedural irregularity.
Likewise, defendant in this case signed the waiver of rights form indicating he understood his rights and that he was waiving them. Additionally, the minute entry reflects the trial court advised defendant of his rights and that defendant waived his rights. Thus, defendant did not meet his burden of proving an infringement on his rights or an irregularity in the 1994 plea.
In summary, we find the State proved the existence of prior counseled guilty pleas in the 1994, 1996, and 2000 convictions. We also find the State proved defendant's identity in the 1994 and 2000 convictions. Defendant's identity in the 1996 conviction is questionable. The burden then shifted to defendant to prove an infringement on his rights or an irregularity in the predicate pleas. Defendant failed to offer any affirmative evidence of an infringement on his rights or an irregularity in the 1994 or 2000 pleas. Thus, we find the trial court did not err in adjudicating defendant a third felony offender.

ERROR PATENT DISCUSSION
This Court performed an errors patent review of the original record in this case at the time of defendant's first appeal. He is now only entitled to an errors patent review of the habitual offender proceedings. See, State v. Yrle, 05-202 (La.App. 5 Cir. 10/6/05), 916 So.2d 1197, 1200.
We note one error patent in this case. We find the trial court failed to properly inform defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. The trial court advised defendant he had "two years from the date this conviction becomes final to seek post conviction relief." This Court has held that the failure to advise defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Hensley, 04-617 (La.App. 5 Cir. 3/1/05), 900 So.2d 1, 13, writ denied, 05-0823 (La.6/17/05), 904 So.2d 683. Further, defendant was incompletely advised of the prescriptive period after his original sentencing, and according to the multiple bill transcript, he was not re-advised when sentenced as a multiple offender.
Therefore, we remand this matter and order the trial court to properly inform defendant of the time from which prescription for post-conviction relief runs by sending written notice of such to defendant within ten days of the rendition of the appellate opinion and to file written proof that defendant received the notice in the record.
Accordingly, defendant's adjudication and sentence as a third felony offender is affirmed and this matter is remanded for correction of an error patent.
AFFIRMED; REMANDED.
NOTES
[1] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).